**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| SEAN MORRISON ENTERTAINMENT, LLC, an Illinois Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>O'FLAHERTY HEIM EGAN & BIRNBAUM, Ltd. A Wisconsin Corporation, NICHOLAS D. THOMPSON, HEATHER CLARK, ANGELA HAYES, BARB HONCHAK, ANGELA MAGANA, MICHELLE OULD, PATRICIA VIDONIC and KAITLAN YOUNG,<br><br>Defendants. | ) | Case No. 11 CV 02462<br>Judge Charles R. Norgle, Sr.<br>Magistrate Judge Maria Valdez |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT ON BEHALF OF DEFENDANTS ANGELA HAYES, BARB HONCHAK, HEATHER CLARK AND ANGELA MAGANA FOR LACK OF PERSONAL JURISDICTION OVER THESE DEFENDANTS**

Defendants Angela Hayes, Barb Honchak, Heather Clark and Angela Magana, through their attorney, Barry A. Rose, hereby present this memorandum of law in support of their Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b) 2 of the Federal Rules of Civil Procedure, due to plaintiff's inability to establish that it has personal jurisdiction with respect to these named defendants.

## INTRODUCTION

Plaintiff brings this action against defendants Angela Hayes, Barb Honchak, Heather Clark, and Angela Magana complaining that they violated the Illinois Trade Secrets Act (ITSA) and tortiously interfered with a prospective economic advantage.

Specifically, plaintiff claims that defendants violated the ITSA by virtue of their complaint filed in Wisconsin that sought monies owed to them for their participation in the Ultimate Women's Challenge (UWC) reality program, in that their complaint included as an attachment, a settlement agreement not honored by the plaintiff, which suggested the results of that UWC program. In addition, plaintiff claims that the defendants interfered with a potential media outlet for the UWC program, when attorney Barry Rose contacted Tuff TV and informed them that plaintiff had never paid defendants for their participation, and did not possess all the necessary release forms from all the defendants who participated in the UWC program.

Defendants counter by asserting that the ITSA is not applicable to this case, and even if it were, that defendants did not have the requisite minimal contacts with Illinois to justify the existence of personal jurisdiction against them. Similarly, defendants steadfastly maintain that attorney Barry Rose's emails to Tuff TV were not authorized or endorsed by them, and in any event, did not tortiously interfere with a business interest of the plaintiff because the communications to Tuff TV were not wrongful, but were honest and accurate statements of fact. In addition, even if one could consider those emails as tortious, plaintiff would not be entitled to litigate these claims against the defendants because defendants have absolutely no contacts that involve Illinois related to this case, or otherwise.

## STATEMENT OF FACTS

In May of 2009 Lyle Howry Productions (LHP) contacted Angela Magana regarding a reality program it was producing which involved viewing the lives of female Mixed Martial Arts (MMA) fighters living together in close quarters, and culminating in

MMA matches between the participants to determine the prize money awarded each of them. Defendants Angela Hayes, Barb Honchak, and Heather Clark, who in addition to Angela Magana, are professional MMA fighters, were later invited to participate in the UWC reality show. In August of 2010, filming began in the state of Nevada and later, the MMA fights for that show were recorded in Utah.

The participants in the UWC program were to be paid according to their contracts in three different ways: (1) the defendants were to be paid a one-time appearance fee of $1000 for their participation in the show; (2) the participants were due to receive $100 per day for each day of filming (which took approximately 5 weeks); and (3) the women were to be paid prize money based on their respective finishing positions in the MMA bouts. (Exh. 1, UWC contract). Approximately a week after filming began, the women were paid their $1000 appearance fees, but to date, they have not received any of the other compensation owed to them pursuant to the contract and subsequent addendum/amendment (Exh. 2) to that contract that governed the UWC program. Therefore, defendants are still owed many dozens of thousands of dollars by the plaintiff.

Defendants were promised on numerous occasions that they would be paid the monies due them, but these owed payments have never been tendered to them. LHP entered into two settlement agreements (Exh. 3—under seal) with the named defendants, admitting it owed substantial sums of money to each of them, and detailing those amounts due. Under the first settlement agreement, defendants were to be paid the monies owed to them on or before January 31, 2011. When that date arrived without any payments to the defendants, LHP entered into a second settlement agreement,

similar to the first, but with an increase in the sums owed to the defendants due to the delay in making the payments. The payments, pursuant to the 2d settlement agreement, were due on or before March 11, 2011, but again were never paid.

As a result, the defendants filed a lawsuit against LHP seeking payment of the monies owed to them. The law firm of O'Flaherty, Heim, Egan & Birnbaum, based in Wisconsin, represented the women seeking payment for the monies due them. The settlement agreements provided that Wisconsin law would govern any dispute, and as such, attorney Nick Thompson from that law firm filed the complaint seeking the payments owed to the UWC defendants in state court in Wisconsin on March 14, 2011. (Exh. 4 w/o attachments). An amended complaint adding the assignee plaintiff (SME) and Tuff TV was filed on April 11, 2011 (Exh. 5 w/o attachments). Thereafter, on April 12, 2011, SME filed suit against Nick Thompson, his law firm, and the UWC participants, claiming trade secret violations under the ITSA because the Wisconsin complaint was not filed under seal, and the second settlement agreement, which suggested the results of the UWC program, was attached to the UWC participants' complaint against LHP and SME. (Doc. # 1).

In late May and early June of 2011, attorney Barry Rose, contacted Tuff TV because the UWC website advertising the program stated that the UWC show would be shown on that network. For more than a year prior to that advertisement's appearance, the UWC website falsely touted that its reality program would be aired on NBC owned and affiliate stations by the end of 2010. Attorney Rose informed Tuff TV that the UWC participants were never paid the monies owed them, and that SME did not possess all the signed documents necessary for SME to have the right to broadcast the program.

Mr. Rose, using assertive language indicated in his emails that lawsuits could be brought against Tuff TV in the event it broadcast the program once it was notified that SME did not have the lawful authority to market the UWC show. Attorney Rose, clearly stated to attorney William Horton, representing Tuff TV, that it should not solely rely upon Rose's representations of the relevant facts, but instead should contact SME and others to ascertain independently that those statements by Mr. Rose were indeed true.

In reality, attorney Rose was only truly representing defendant Angela Magana at the time he sent the emails to Tuff TV's counsel, as Ms. Magana had been a long time client of his. However, Mr. Rose admits that the emails he sent to Tuff TV indicated he was representing the other UWC defendants as well. He did it in this manner, because the legal issues were the same for all these defendants, and he was personally outraged that the UWC participants were now being portrayed in the lawsuit by SME as victimizers, when in reality they were the victims. Attorney Rose did copy the 7 UWC defendants on those emails as a courtesy (SME's attorney was also sent a copy), but Mr. Rose did not communicate with any of them regarding Tuff TV before the emails were sent, and did not communicate with any of the other defendants at all until more than a week after the final email was sent. The last email to Mr. Horton was sent on June 5, whereas defendants Magana, Hayes, Honchak, and Clark returned their signed engagement contracts to attorney Rose dated Jun 20, 2011, June 27, 2011, June 15, 2011 and August 17, 2011 respectively. (Exh's. 6,7,8, & 9). These defendants were not consulted or informed regarding the drafting of these emails to Tuff TV, and only first learned about them when they received the courtesy copies that were sent them.

## ARGUMENT

### I. THE ILLINOIS TRADE SECRETS ACT IS INAPPLICABLE TO THIS CASE, BUT EVEN IF IT WERE A POTENTIAL BASIS FOR LIABILITY, THE UWC DEFENDANTS DO NOT HAVE THE REQUSITE MINIMUM CONTACTS WITH THIS FORUM TO SATISFY DUE PROCESS IN ORDER TO JUSTIFY THE IMPOSITION OF PERSONAL JURISDICTION AGAINST THEM

Plaintiff seeks to impose penalties under the Illinois Trade Secrets Act (ITSA) against the UWC defendants for allegedly revealing the results of the UWC Reality show on which they appeared for approximately 5 weeks in August and September of 2010. This “disclosure” was made in the form of a settlement agreement attached to their complaint that they filed in Wisconsin State Court seeking the sums of monies due them, and which detailed the payments due each participant based on the order of position she placed in that reality program. (Exh. 4—Complaint w/o attachments). All of the UWC defendants were lay persons who knew nothing about the procedures of the law, such as, whether a case could, or should be filed under seal. Their attorneys did not advise them there could be any possible liability for affixing their signatures on that settlement contract, or the complaint against LHP and SME.

The consistent decisions by our courts preclude any finding that the results of the settlement agreement could constitute a trade secret. In order to state a claim under the ITSA, a plaintiff must (1) allege that a trade secret exists; (2) that it was misappropriated; and (3) it was used by the defendant in its business. *Motorola Inc. v. Lemko Corp.*, 609 F.Supp.2d 760, 770 (ND Ill. 2009). *Accord. UTStarcom, Inc. v. Starent Networks Corp.* 675 F.Supp.2d 854, 864 (ND Ill. 2009). The UWC defendants are all professional MMA fighters; they are not owners or producers of reality based shows such as the Ultimate Women’s Challenge program. Thus, defendants have no

reason or benefit to use this UWC show in their business as professional fighters; and as a result, the ITSA is not applicable to them. Furthermore, to qualify as a trade secret the information involved must impart economic value to both its owner and competitors. *Mangren Research and Development Corp. v. National Chemical Co., Inc.*, 87 F.3d 937, 943 (7th Cir. Ill. 1996). Defendants are in no way competitors to plaintiff, as their business is MMA fighting, not the production of any reality shows. As a result, inasmuch as no trade secret was misappropriated by defendants, they did not use the information in their business, and they are not competitors to SME, the ITSA is inapplicable to them, and thus, there is no personal jurisdiction over them in this case.

Moreover, even if you assume *arguendo* that the ITSA is in fact applicable to the UWC defendants, plaintiff would have no basis for personal jurisdiction against these defendants. Indeed, plaintiff bases his jurisdiction on its allegation in its 2d amended complaint that personal jurisdiction exists over all the defendants because they engaged in intentional conduct for the purpose of causing harm to plaintiff in this jurisdiction. (Doc 22 Par. 3).

However, the key inquiry when determining whether a plaintiff is able to assert personal jurisdiction against a particular defendant is based on a defendant having sufficient minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. Ill. 2010). Moreover, the party asserting jurisdiction over a nonresident must establish jurisdiction by a preponderance of the evidence, rather than by merely making a prima facie showing. *People ex. rel. Hartigan v. Kennedy*, 215 Ill.App.3d 880, 890, 576 N.E.2d 107, 114 (1st Dist. 1991). In addition, the

fact that it may be foreseeable that a nonresident's activities might cause injury in a forum state is not a sufficient basis upon which to predicate personal jurisdiction over a defendant under the 14th Amendment. *Campbell v, Mills*, 262 Ill.App.3d 624, 628, 634 N.E.2d 41, 44-45 (5th Dist. 1994). Furthermore, for a plaintiff alleging only economic injury, he needs to show more than harm was in Illinois; plaintiff must also show intent to affect an Illinois interest. *George S. May Intern Co. v. XCentr Ventures, LLC*, 409 F.Supp.2d 1052, 1055 (N.D. Ill. 2006).

Instead, for an exercise of personal jurisdiction against a nonresident defendant to comport with due process, a defendant must have purposefully availed himself of the rights and privileges of conducting activities in the forum state, such that it invoked the benefits and protections of that forum state's law. *Banwell v Illinois College of Optometry*, 981 F.Supp. 1137, 1139 (N.D. Ill. 1997). Based on the principles espoused in the above-mentioned cases, it is clear that defendants have no sufficient minimum contacts in this case to justify the imposition of personal jurisdiction over them. Here, all the defendants reside, and are citizens of other states; all of the filming of the UWC reality show occurred in Nevada and Utah; and the entity which produced the UWC program, LHP, was based in California. The only contact Illinois has with these defendants is that the assignee plaintiff, SME is based in Illinois. However, none of the UWC participants ever met with any representative of SME during the filming of the program and only learned it was the new owner of the show when it instituted this lawsuit against them. None of the defendants own property in Illinois, or has participated in any professional MMA matches in this state. Indeed, defendants Hayes, Clark and Magana have never even visited Illinois. Thus, to force these defendants to litigate a

case in a distant forum when they have no contact with Illinois is patently unfair and violative of their due process rights under State and Federal law.

## II. DEFENDANTS DID NOT COMMIT A TORTIOUS ACT WITHIN THE MEANING OF THE ILLINOIS LONG ARM STATUTE, BUT EVEN IT WERE CONSTRUED THAT LONG ARM JURISDICTION WERE PROPER HERE, DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THIS CASE BECAUSE NONE OF THE UWC DEFENDANTS HAVE ANY SIGNIFICANT CONTACTS WITH ILLINOIS.

### A. The defendants did not commit a tortious act in Illinois

In order for a federal district court to exercise personal jurisdiction over an out-of-state defendant, jurisdiction must be proper under that forum state's law. *RAR Inc. v. Turner Diesel, Ltd,* 107 F.3d 1272, 1275 (7th Cir. 1997). Personal jurisdiction can be based on general or specific jurisdiction. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.* 623 F.3d 440, 444 (7th Cir. 2010). For general jurisdiction to exist the defendant's contacts must be continuous and systematic. *Citadel Group Ltd. V. Wash. Reg's Med. Ctr.* 536 F.3d 757, 760 (7th Cir. 2008). Defendants have no systematic or continuous contacts with Illinois, so general jurisdiction could not exist here. Plaintiff accepts that as true, as it did not even attempt to plead general jurisdiction in its Second Amended Complaint. (Doc. 22 Par. 3).

An alternative basis for personal jurisdiction is specific jurisdiction. For specific jurisdiction to exist against a nonresident defendant, the defendant must have sufficient minimum contacts, so that the exercise of jurisdiction is consistent with fair play and substantial justice. *Tamburo v. Dworkin*, 601 F.3d. 693, 700 (7th Cir. Ill. 2010). The plaintiff has the burden of establishing whether personal jurisdiction exists. *RAR, Inc. v. Turner Diesel Ltd*. 107 F.3d. 1272, 1276 (7th Cir. Ill. 1997). Under Illinois law, for a court

to exert personal jurisdiction over a nonresident defendant, it must be fair and reasonable to require the defendant to litigate an action in Illinois considering the quality and nature of the defendant's acts which occur in Illinois. *Pasulka v. Sykes*, 131 F.Supp.2d 988, 992 (N.D. Ill. 2001).

Here it appears that the plaintiff is claiming specific personal jurisdiction is present in this case under the Illinois Long Arm Statute, *735 ILL. COMP. STAT 5/2-209* (2010) because defendants allegedly committed a tortious act in Illinois. (Doc. 22 Par. 3). However, as will be demonstrated below, defendants committed no tortious act in Illinois, or elsewhere for that matter, so that personal jurisdiction here must fail.

Torts are characterized as civil wrongs. *Prosser and Keaton on Torts*, Sec.1 P. 3 (5th Ed. 1984). The primary purpose of a civil action for tort is to compensate an injured plaintiff at the expense of the alleged wrongdoer. (Prosser Sec. 2 P. 7). Here, defendants committed no wrong of any type. Attorney Barry Rose informed Tuff TV via email that plaintiff neither had paid the defendants for their performances on the UWC program, nor had the plaintiff obtained the defendants' signatures on all the appropriate documents. As such, Tuff TV was notified by Barry Rose that the plaintiff SME did not possess the legal right to air the program. Every fact contained in the emails sent by Barry Rose was true and accurate. If party B, honestly informs party C that party A is misrepresenting party A's rights in a product to be sold to party C, this cannot constitute a tortious act by party B; for it were so considered, no person could ever warn a third party of the misdeeds of a party attempting to do business with that third party without committing a tort. Such a conclusion would certainly be against public policy, and is the

exact situation in this case. Truthfulness should not be considered tortiousness, as in a fair, just, and open society; truthfulness is to be rewarded and not punished.

Moreover, plaintiff does not allege that the defendants contacted Tuff TV. Instead, plaintiff blames attorney Rose as the culprit for the alleged wrongdoing and presumably is attempting to hold the defendants responsible based on his actions as their agent. However, as the sworn affidavits of attorney Rose and the defendants demonstrate, defendants were unaware of Rose's actions, they did not request or sanction that he contact Tuff TV, and did not preview or discuss any emails sent to Tuff TV prior to them being sent by him. (Exh's. 10, 11,12,13, &14). Attorney Rose has been defendant Angela Magana's attorney for several years and he was extremely upset that she was potentially being victimized again through the unlawful broadcast of the UWC show, despite the fact that she was never paid the monies owed to her. Inasmuch as all 7 UWC defendants were in the same position, as a courtesy, attorney Rose copied the 7 defendants on his emails to Tuff TV. It was more than a week after the last email to Tuff TV was sent until any of the 7 defendants contacted him. Moreover, the nature of defendants' contacts with Mr. Rose at that time were unrelated to the emails sent to Tuff TV, but instead involved possible representation in the present case. Further, not all of the 7 UWC defendants in this litigation have ever contacted Mr. Rose, and he only represents defendants Hayes, Honchak, Clark, and Magana in this case. Defendants were referred to attorney Rose by the defendant law firm in this case. The last email sent to Tuff TV was on June 5, 2011 and as indicated above, defendants Honchak, Magana, Hayes and Clark did not sign engagement contracts with attorney Rose until June 15, June 20, June 27, and August 17 respectively. (Exh's. 6,7,8, & 9).

Therefore, attorney Rose could not be considered an actual agent for these defendants, because he did not represent them at the time he sent the emails. For the plaintiff to be able to hold these defendants liable, based on attorney Rose's unsolicited actions, it must prove there was apparent authority for attorney Rose to be considered their agent. Apparent authority exists where a principal, through his words or conduct, creates a reasonable impression the agent has the authority to act on behalf of the principal. *Damien Services Corp. v. PLS Services, Inc.*, 763 F.Supp. 369, 372 (N.D. Ill. 1991). Here plaintiff did not, and cannot allege any words or conduct on the part of the defendants as principals, in order to imbue attorney Rose with apparent authority on their behalf, as none of them ever had any contact with Tuff TV, or with plaintiff.

Furthermore, plaintiff is responsible for creating the scenario that caused attorney Rose to contact Tuff TV. As the sworn affidavits of attorney Rose and the defendants attest (Exh's. 10,11,12,13, & 14), the UWC website operated by plaintiff falsely stated for more than a year that the show would be broadcast on NBC network and affiliate stations. Soon after the UWC website removed that reference to NBC, the UWC website proclaimed "Ultimate Women's Challenge to be seen in 45 million homes. The Producers of the Ultimate Women Challenge announce that this hard hitting television series will soon be seen on Tuff TV." (Screenshot Exh. 15). Thus, SME indicated that it had a contract in place with Tuff TV to air that reality program. Attorney Rose never would had contacted Tuff TV, but for the false reference on the UWC website that the program would air on that media outlet. In contradiction to that referenced mention on the UWC website, plaintiff's Second Amended complaint makes no allegation of a contract with Tuff TV, but instead alleges that defendants interfered with a potential

economic advantage, which prevented it from signing a contract with that entity. Therefore, plaintiff was either lying about the actual existence of the contract with Tuff TV as indicated on its UWC website, or plaintiff lied in its complaint, when it stated it had a potential expectancy to do business, but no contract with Tuff TV. Such a significant difference in those two positions should weigh heavily against the credibility of any of the plaintiff's claims, especially when you combine them with its previous lies and its repeated failures to pay the defendants the monies owed to them.

Furthermore, plaintiff cannot remotely establish that the actions of the defendants, or attorney Rose were tortious. It is true that a plaintiff does not have to allege all elements of a tortious act for jurisdictional purposes. *U. S. Dental Institute v. American Ass'n of Orthodontists*, 396 F.Supp. 565, 571 (N.D. Ill. 1975). However, a plaintiff must still demonstrate that his claim is based on acts that occurred in Illinois and that the complaint states a cause of action. *Id* at 571. Here the alleged tortious act occurred in Tennessee where the attorney for Tuff TV received the emails. Moreover, plaintiff cannot establish it has a cause of action for the alleged tort. A tort for interference with prospective advantage requires (1) a reasonable expectation of entering into a valid business relationship; (2) defendant's knowledge of the plaintiff's expectancy; (3) intentional and unjustified interference by defendant which prevents that expectancy ripening into a valid business relationship; and (4) damages resulting from the interference. *Anderson v.Vanden Dorpel,* 172 Ill.2d 399, 406-407, 667 N.E.2d 1296, 1299 (1996).

Here, plaintiff could <u>never</u> establish it has a cause of action in tort against the defendants, because two key elements are missing. First, as indicated in their sworn

affidavits of attorney Rose and the UWC defendants, they had no knowledge of any business relationship between SME and Tuff TV. Indeed all of them were skeptical of the pronouncement on the UWC website that it would be shown on that network, in light of the many false promises and lies told to the defendants, such as that the show would be broadcast on NBC stations. Second, any interference with Tuff TV by defendants would be completely justified due to the vast sums of monies owed to defendants for their performances on the UWC program that were never paid to them by LHP or SME.

Furthermore, although the nature of a tortious act for jurisdictional purposes need not fit within the technical definition of a tort; in the absence of such, plaintiff must establish there is a breach of an alleged duty resulting in liability. *Sabados v. Planned Parenthood of Greater Indiana*, 378 Ill.App.3d 243, 249, 882 N.E. 2d 121, 127 (1st Dist. 2007). In this case, defendants owed plaintiff no duty. Plaintiff breached its agreements to pay the monies owed the defendants under the original contract and the addendum/amendment. In addition, plaintiff admitted its breaches by entering into 2 settlement agreements that were never honored by it. Under general contract principles, a material breach by one party is grounds for releasing the other party from his or her contractual obligations. *Solai & Cameron, Inc. v. Plainfield Community Consolidated School District No. 202*, 374 Ill.App.3d 825, 836, 871 N.E.2d 944, 953 (3d Dist. 2007). Moreover, the failure of a party to make required payments has been held to be a material breach under Illinois law. *Chicago Daily News, Inc. v. Kohler*, 360 Ill. 351, 368, 196 N.E.2d 445, 452 (1935). As a result, defendants had no duty to keep the results of the UWC program secret, and certainly would have the right to inform Tuff TV of the

relevant facts that defendants had not been paid, and had not executed all the documents necessary for anyone to legally televise the UWC program.

Plaintiff may argue that the express aiming test of *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 1487 (1984) supports its position that a single tortious act can be a basis for specific jurisdiction, as plaintiff might assert the emails sent to Tuff TV were aimed at the plaintiff, and thus satisfy personal jurisdictional requirements. However, consistent with Calder, in *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) our federal appellate court clearly stated that where a defendant has no minimum contacts with Illinois, an allegation of an intentional tort does not suffice to sustain personal jurisdiction. The key inquiry is whether the defendant avails himself of the privilege of conducting activities within the forum State to invoke the benefits and protections of its laws. *Id*. at 395. *Accord. Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 445 (7th Cir. 2010).

An examination of these cases clearly establishes that no personal jurisdiction over these defendants is present in this case. First, none of the defendants was involved in the drafting or sending of the allegedly tortious emails. Second, even if you could attribute attorney Rose's actions to the defendants, the so-called intentional tort was not aimed at the plaintiff, but rather, instead, at Tuff TV who, according to plaintiff's UWC website would be televising the program very soon. The goal was to stop the unlawful broadcast; there was no consideration regarding any indirect or ancillary consequences there might be for the plaintiff. Third, defendants have done nothing to avail themselves of the benefits and protections of Illinois law, as the defendants have no contacts with Illinois. The emails that were copied to them were all received in their

home states, none of which is Illinois. The passive receipt by defendants of unsolicited emails cannot be a basis to sustain a finding of personal jurisdiction in this case. Where there is no proof that defendants issued any type of tortious statement, or targeted Illinois residents, there is no jurisdiction for alleged economic injury suffered in Illinois. *Morton Grove Pharmaceuticals, Inc. v. National Pediculosis Ass'n, Inc.*, 485 F.Supp.2d 944, 950 (N.D. Ill. 2007). Further, it has been held that when an injury arose from tortious statements, the location where the phone was actually dialed is not determinative of the situs of a tort; instead the analysis focuses on where the information is received and used, and not the mechanics of the electronic communication. *Wysnoski v. Millet*, 759 F.Supp. 439, 442 (N.D. Ill. 1991). Here the information was emailed from Illinois, but received in Tennessee and used there.

B. Plaintiff cannot assert personal jurisdiction over the UWC defendants because none of them has any significant contacts related to this case or otherwise.

Even if you assume *arguendo* that defendants committed a tortious act within Illinois, no personal jurisdiction over these defendants exists in this case, because defendants have no significant contacts with this state. The assertion of personal jurisdiction over a nonresident defendant must satisfy the requirements of due process, as well of those of the long-arm statute. *Hoekstra v. Bose*, 302 Ill.App.3d 704, 707, 707 N.E.2d 185, 188 (1st Dist. 1998). If the requirements of the due process clause are not met, it is unnecessary to consider whether the requirements of long-arm jurisdiction over a defendant can be found. *Ideal Ins. Agency Inc. v. Shipyard Marine Inc.*, 213 Ill.App.3d 675, 678, 572 N.E.2d 353, 355-356 (2d Dist. 1991). A nonresident

defendant's conduct in relation to the forum state is used to determine whether personal jurisdiction exists. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946 (7th Cir. Ill. 1992).

These four defendants have absolutely no contacts with Illinois to warrant personal jurisdiction. The UWC reality show was filmed primarily in Nevada, the MMA fights which determined the winners of the show were filmed in Utah, and the producer of the show is located in California. None of these four defendants reside, or is a citizen of Illinois, and defendants Hayes, Clark, and Magana have never set foot in this state. Moreover, as stated above, the affidavits of attorney Rose and defendants clearly indicate he did not represent them until well after the allegedly tortious emails were sent to Tuff TV in Tennessee. Attorney Rose had represented defendant Angela Magana previously, but technically did not even represent her in this case until June 20, 2011 when she signed the engagement contract for his legal services. In any event, the requirements for subjecting nonresident defendants must be met for every defendant over whom the state exercises jurisdiction. *Johnston v. United Presbyterian Church in U. S. of America, Inc.*, 103 Ill.App.3d 869, 872, 431 N.E.2d 1275, 1278 (1st Dist. 1981). Here, defendants Hayes, Honchak, Clark and Magana have no connections with Illinois.

Furthermore, in determining whether the exercise of personal jurisdiction is consistent with fair play and substantial justice, and comports with due process requirements, a court must consider *inter alia*:(1) burden on a defendant in litigating in the forum state; and (2) the interests of the forum state in adjudicating the litigation. *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines Inc.*, 262 F.Supp.2d 898, 909 (N.D. Ill. 2003). Defendant Magana is a single mother of a 9 year-old girl who is a state Medicaid recipient, is of limited means living in rural New Mexico, with

earnings from fighting in MMA bouts, teaching kickboxing classes and refereeing high school wrestling meets. Defendant Honchak earns a modest wage as a personal trainer and resides in Missouri, which is nearly 300 miles from the court in Chicago. Defendant Hayes is also of modest means as a manager at a Wendy's and lives in excess of 1000 miles away in Colorado. Lastly, defendant Clark works part-time as a photographer and resides in New Mexico.

A plaintiff must prove jurisdiction exists once it is challenged by a defendant. *Bally Export Corp. v. Balicar, Ltd*., 804 F2d 398, 401 (7th Cir. Ill. 1986). Moreover, where as here, the defendants contest jurisdiction in supporting affidavits, the facts contained in those uncontested affidavits denying jurisdiction must be accepted as true. *Campbell v. Mills* 262 Ill.App.3d 624, 627, 634 N.E.2d 41, 44. (5th Dist. 1994).

Each of these women, in addition to her work obligations, must train 4-5 hours a day, 6 days a week in order to maintain a fighting edge for the brutal MMA bouts in which they compete. Therefore, it would be an extreme hardship for these defendants to require them to defend this action in Illinois, in addition to the violations of their due process rights, if jurisdiction were allowed here. Furthermore, Illinois has extremely limited interest in this litigation, as it concerns a reality show filmed in Nevada and Utah, from a producer who operates from California. The only contact with Illinois is that the assignee plaintiff is located in this state. That tangential contact with Illinois is not sufficient to sustain personal jurisdiction in this case. As a result, this action against these defendants should properly be dismissed.

## CONCLUSION

WHEREFORE, for all of the reasons stated above, defendants Hayes, Honchak, Clark, and Magana respectfully request this Honorable Court dismiss the Second Amended Complaint of the plaintiff for a want of personal jurisdiction.

Respectfully Submitted,

s/Barry A. Rose

Barry A. Rose
Attorney for Defendants Hayes, Honchak, Clark, and Magana
514 N. Forest Glen Drive
Round Lake Park, IL 60073
847 740 8273 (office), 847 409 3218 (cell)
baroselaw@gmail.com
ARDC # 2377624