

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SEAN MORRISON ENTERTAINMENT, LLC ) ) ) Plaintiff, ) ) v. ) ) THOMPSON, et al. ) ) Defendants. ) | 11 C 2462<br><br><br><br><br><br><br>Hon. Charles R. Norgle |

## OPINION AND ORDER

Before the court is a motion by Defendants O'Flaherty, Heim, Egan & Birnbaum, Ltd. (the "Firm") and Nicholas D. Thompson ("Thompson") to dismiss the second amended complaint for lack of personal jurisdiction and failure to state a claim. Also before the court is a separate motion by Defendants Angela Hayes, Barb Honchak, Heather Clark, and Angela Magana (collectively "Fighters") to dismiss for lack of personal jurisdiction. For the following reasons, both motions to dismiss are granted pursuant to Rule 12(b)(2).

## I. BACKGROUND

This federal lawsuit followed a Wisconsin state court lawsuit ("Wisconsin suit") that Defendants filed against Plaintiff Sean Morrison Entertainment, LLC. In the Wisconsin suit, seven plaintiffs, all Defendants here, alleged Plaintiff failed to pay them for their participation in the production of a mixed martial arts ("MMA") competition called the Ultimate Women's Challenge ("UWC"). The UWC was designed as a contest

format reality television show in which sixteen women lived, trained, and fought together. The results of the UWC bouts were a secret; each UWC participant signed a confidentiality agreement.

Thompson, a Firm lawyer and a former MMA fighter himself, filed a March 15, 2011 lawsuit in Lacrosse County Circuit Court, Wisconsin, seeking payment for the seven fighters.[1] The Wisconsin suit alleges, among other things, that Plaintiff never paid them for several weeks of filming in Nevada and Utah, withheld prize money, and failed to pay the medical expenses of one participant badly injured during a bout. The combined value of the claims is well into six figures. In asserting facts supporting breach and other theories, Thompson's filing indicated winners of the UWC bouts. The results leaked to three MMA websites that reported the results online. Plaintiff, who invested $600,000 in the UWC production, owns the rights to UWC, including the right to broadcast the competition and reveal the champs.[2]

Plaintiff sued Thompson, the Firm, and the seven UWC participants in federal court in Illinois, where Plaintiff's limited liability company is organized. Four of the participants—the Fighters—retained Illinois attorney Barry Rose. Rose, before entering into formal engagement contracts with each Fighter, telephoned Plaintiff's potential broadcast partners and threatened litigation if the UWC competition aired before the Fighters received payment. Plaintiff alleges misappropriation of trade secrets and intentional interference with prospective economic advantage. Plaintiff also seeks a

---

[1] Three of the seven UWC participant Defendants, Kaitlin Young, Michele Ould, and Patricia Vidonic, have not joined these motions. The remaining nine UWC competitors are not parties to this lawsuit.
[2] Plaintiff, originally an investor in the UWC production, is assignee of the UWC rights after the original production company, LHP Productions, which is a California entity and a defendant in the Wisconsin suit, reportedly failed to repay Plaintiff's loans.

declaratory judgment allowing it to broadcast the UWC. Thompson, the Firm, and the Fighters move to dismiss under Rule 12(b)(2). Thompson and the Firm move in the alternative to dismiss under Rule 12(b)(6). Because the court finds it lacks personal jurisdiction, it does not reach the Rule 12(b)(6) issue.

## II. DISCUSSION

### A. Standard of Decision

In a diversity case, a court has personal jurisdiction if the state in which it sits would have jurisdiction. See, e.g., RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997). "[I]n almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns regarding personal jurisdiction." Keller v. Henderson, 834 N.E.2d 930, 941 (Ill. 2005). The defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (quotation omitted); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2850-51 (2011). Minimum contacts require a defendant to purposely avail itself of the protections of the forum state. See Hyperquest, Inc. v. NuGen I.T., Inc., 627 F. Supp. 2d 884, 892 (N.D. Ill. 2008) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random . . . contacts. Jurisdiction is proper, however, where the contacts proximately result from actions . . . that create a substantial connection with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). The concept of minimum contacts keeps a defendant from having to litigate in a distant forum where he may not reasonably

3

anticipate being haled into court. See World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980).

Personal jurisdiction over an out-of-state defendant may be general or specific. Hyperquest, 627 F. Supp. 2d at 892-93 (citing Helicopteros Nacionales de Coloumbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). "General jurisdiction is appropriate where the defendant's contacts with the forum state are continuous and systematic." Citadel Group Ltd. v. Wash. Reg'l Med. Ctr., 536 F.3d 757, 760 n.3 (7th Cir. 2008) (quotation omitted). The standard for general jurisdiction is "considerably more stringent" than the minimum contacts for specific jurisdiction. Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir. 2003). "[T]hese contacts must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum court] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." Id. at 787. Plaintiff, at this point in the litigation, must establish a prima facie case of personal jurisdiction based on allegations in the complaint the court accepts as true unless proved otherwise by defendants. See uBID, Inc. v. GoDaddy Group, Inc., 623 F.3d 421, 423-24 (7th Cir. 2010); Purdue Research Found., 338 F.3d at 782.

**B. Rule 12(b)(2) Motion to Dismiss by Thompson and the Firm**

**1. General Jurisdiction**

Plaintiff alleges both general and specific jurisdiction. Plaintiff expressly asserts general jurisdiction in its response brief only, not in its complaint; the court in an abundance of caution entertains it. Plaintiff asserts general jurisdiction because four of the Firm's twelve lawyers are admitted to practice before the Seventh Circuit, which

4

covers Wisconsin; one of those is admitted before the Northern District of Illinois; another of the Firm's lawyers went to law school in Illinois; and a sixth lawyer attended college and orthogenic school in Illinois. Thompson himself, moreover, once fought MMA bouts in Illinois. The court understands Plaintiff to argue that these facts create general jurisdiction. These so-called contacts are not, alone or in the aggregate, continuous or systematic. Not one of Defendants' lawyers, including Thompson, is licensed to practice law in Illinois. There is no prima facie case. Plaintiff's arguments are boldly unpersuasive as to general jurisdiction.

### 2. Specific Jurisdiction

The question is marginally closer on specific jurisdiction. Invoking the Supreme Court's "express aiming" test in Calder v. Jones, 465 U.S. 783 (1984), Plaintiff argues Defendants filed the unsealed Wisconsin suit revealing secret UWC results in order to cause injury to Plaintiff in Illinois. In Calder, two Florida journalists wrote an article for the National Enquirer about the entertainer Shirley Jones. Id. at 784-86. The story said Jones was a drunk and she sued for libel in California. Id. at 788. Jones lived and worked in California, the state where the Enquirer's circulation was highest. Id. at 789-90. The journalists' research targeted California, including interviews with people there. Id. "They're not charged with mere untargeted negligence," the Court reasoned on the facts, "and so must reasonably anticipate being haled into court there." Id.

In limiting fashion, the Seventh Circuit applies Calder's "aiming" test not as a separate route to personal jurisdiction but as another instance of finding sufficient minimum contacts under International Shoe and its progeny. See Wallace v. Herron, 778 F.2d 391, 395 (7th Cir. 1985) ("[The] test is merely another way of assessing the

5

defendant's relevant contacts with the forum State."). In Wallace, as here, the suit was a response to an earlier state court suit. The defendants had filed against the Indiana plaintiff in California state court. Id. The defendant lawyers and their clients were all from California. Id. The Indiana plaintiff sued in federal court in Indiana, alleging personal jurisdiction because of the California defendants' discovery requests and plaintiff's locale. Id. The court sharply distinguished Calder, finding the defendants' alleged contacts too "attenuated" for jurisdiction. Id. Wallace was recently endorsed by the Seventh Circuit in a review of its "not entirely consistent" approach after Calder. Mobile Anesthesiologists, LLC v. Anesthesia Assocs. of Houston Metroplex, PA, 623 F.3d 440, 445 (7th Cir. 2010) ("We view Wallace as a correct statement of the standard set down by the Supreme Court."). Thompson and the Firm argue that both the facts and doctrine of Wallace control the outcome here. The court agrees.

The Mobile Anesthesiologists, LLC court stated that "a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there." Id. In addition to the essentially irrelevant allegations about Defendants' Illinois law school, undergraduate experiences, and former pugilism, the only colorable argument Plaintiff makes with respect to "aiming" is that Defendants "were aware that Plaintiff's principal place of business is in Illinois, and thus the injury would be felt most severely in Illinois." Pl.'s Resp. to the Mot. to Dismiss filed by Defs. O'Flaherty Heim Egan & Birnbaum, Ltd. & Nicholas D. Thompson 7. Controlling precedent makes clear that this is not enough for personal jurisdiction via aiming. "The cases that have found express aiming have all relied on evidence beyond the plaintiff's

mere residence in the forum state." Mobile Anesthesiologists, LLC, 623 F.3d at 447 (citing Calder, 465 U.S. at 789-90; Tamburo v. Dworkin, 601 F.3d 693, 697 (7th Cir. 2010); Panavision L.P. Int'l v. Toeppen, 141 F.3d 1316, 1319, 1322 (9th Cir. 2008)).

Plaintiff alleges Thompson and the Firm failed to file the UWC results in the Wisconsin suit under seal, which harmed Plaintiff, who is located in Illinois. Stripped of conclusions, Plaintiff's allegations consist of (1) Illinois residence and (2) the sort of "untargeted negligence" the Supreme Court rejected in Calder. Although Plaintiff does, in a single sentence, assert on "information and belief" that Defendants broadcast the secret results, this is a conspicuously vague allegation void of any real factual assertions. Plaintiffs really advance only an "impact theory of minimum contacts, which mistakenly assumes that because defendants' alleged tortuous conduct would be felt in Illinois, the defendants *must have* acted with an intent to affect an Illinois interest." Hyperquest, 627 F. Supp. 2d at 894 (rejecting this post-hoc argument). Allowing such allegations to suffice "would make any defendant accused of an intentional tort subject to personal jurisdiction in the plaintiff's home state as soon as the defendant learns what that state is. Calder requires more." Mobile Anesthesiologists, LLC, 623 F.3d at 447. Even if, as Plaintiff alleges in familiar conclusory fashion, Defendants' unsealed filing of secret UWC results was not "random," Plaintiff fails to allege activities by Defendants "that create a substantial connection with the forum State." Burger King Corp., 471 U.S. at 475-76. The Illinois contacts of Thompson and the Firm are a far cry from Calder and no less "attenuated" than the defendants' contacts in Wallace. Wallace, 778 F.2d at 395. Without minimum contacts, Thompson and the Firm cannot reasonably expect to be haled into Illinois federal court, and this court therefore lacks personal jurisdiction over

them. See World–Wide Volkswagen Corp., 444 U.S. at 291–92. Their motion to dismiss pursuant to Rule 12(b)(2) is granted.

**C. Rule 12(b)(2) Motion to Dismiss by the Fighters**

With respect to personal jurisdiction, Plaintiff's second amended complaint alleges: "The Court has personal jurisdiction over Defendants because the Defendants engaged in intentional conduct with the purpose of causing harm to Plaintiff in this District and could reasonably anticipate being hailed [sic] into court in this District." Second Am. Comp. 4. In its response brief, Plaintiff advances the same arguments against the Fighters as it did against Thompson and the Firm, asserting the Fighters are responsible for the actions of their counsel. Even if they are responsible, without more Wallace rules out personal jurisdiction on the same grounds.

Plaintiff also argues that the actions of Barry Rose, the Fighters' attorney in this federal lawsuit, creates personal jurisdiction. Plaintiff contends it struck a "joint marketing agreement" with Tuff TV Media Group, LLC ("Tuff TV"), apparently sometime in early to mid-2011. This deal may have led to an airing of UWC. But Rose, in May and June 2011, threatened counsel for Tennessee-based TUFF TV with legal action in order to obtain payment for the UWC participants and vowed to stop the UWC from airing. At this time, however, none of the UWC participants had entered into engagement contracts with Rose. The Fighters' supporting memorandum, which Rose himself filed, admits that Rose lied when he told TUFF TV he was representing the UWC participants. None were clients in this matter as of June 5, 2011, the date of the last of Rose's threats. The first Fighter did not enlist Rose until June 15, 2011, and the last did not sign on until August 17, 2011, more than two months later. The memorandum states

8

that Rose was really only representing one Fighter, Angela Magana, when he threatened Tuff TV. However, Magana did not engage Rose until June 20, 2011, more than two weeks after his last threat. Furthermore, the memorandum states that Rose "did it in this manner, because the legal issues were the same for all these defendants, and he was personally outraged" by Plaintiff's lawsuit.

**1. General Jurisdiction**

Once again, Plaintiff alleges both general and specific personal jurisdiction, and once again raises general jurisdiction for the first time in its response. Plaintiff contends there is general jurisdiction because (1) the Fighters engaged Illinois lawyer Barry Rose after Plaintiff sued the Fighters in Illinois; (2) the Fighters signed written engagements with Rose, who is based in Illinois; (3) Rose has represented Fighter Angela Magana in other matters, dating back three years; (4) Rose suggested to the original UWC production company that Magana participate in the competition; (5) the Fighters did not, after the fact, object to Rose's threats to Tennessee-based Tuff TV; and (6) Rose received correspondence and payment from the Fighters in Illinois. Plaintiff argues that the foregoing creates continuous and systematic presence in Illinois.

In the other corner, the Fighters point out that none of them live in Illinios. None own property in Illinois. Only one has set foot in Illinois. None of them are corporations but instead individuals. Angela Magana lives in New Mexico. She has a nine-year-old daughter who is a state Medicaid recipient and earns a living from fighting MMA bouts, teaching kickboxing, and refereeing high school events. Barb Honchak lives in Missouri and works as a personal trainer. Heather Clark lives in New Mexico and works as a part-time photographer. Angela Hayes lives in Colorado and manages a Wendy's restaurant.

During filming, the set was in Nevada and the final bouts were shot in Utah. The original producer is from California. None of the participants' contracts were executed in Illinois.

Plaintiff's argument does not approach the standard for general jurisdiction. See Purdue Research Found., 338 F.3d at 787. "[T]hese contacts must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum court] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." Id. Rose's threats obliquely suggest actual agency only as to Angela Magana,[3] though directed as they were toward a Tennessee entity, before actual engagement by the client, and initiated by Rose's own "personal outrage," it matters little to this analysis. Plaintiff's remaining allegations consist of the Fighters' decision to retain Illinois counsel after Plaintiff sued them in Illinois. Hiring an attorney in a state where one is sued, even if one engaged that attorney before, is on its own hardly "tantamount" to constructive presence. See id. Plaintiff's argument is frivolous. Based on these facts, the court finds none of the Fighters had a continuous and systematic presence in Illinois such that there is general jurisdiction over them.

### 2. Specific Jurisdiction

As to specific jurisdiction, Plaintiff reiterates its failed Calder argument and adds that "Defendants themselves impliedly acknowledged that Illinois is a sufficient forum state when Defendants hired Barry Rose, an Illinois attorney, for representation." This argument is absurd, as are others the court declines to address here. The court has already discussed the Fighters' almost nonexistent connections to Illinois and their lives of modest means in New Mexico, Missouri, and Colorado. A further Burger King Corp.

---

[3] They suggest apparent agency as to none of the Fighters.

analysis is unnecessary. Based on the Plaintiff's allegations, it cannot be said the Fighters purposely availed themselves of the protections of Illinois such that they can reasonably expect to defend a lawsuit in the state. Traditional notions of fair play and substantial justice do not permit this court to hale people with barely discernable links to Illinois into its federal court. See Int'l Shoe Co., 326 U.S. at 316; World–Wide Volkswagen Corp., 444 U.S. at 291–92; be2 LLC v. Ivanov, 642 F.3d 555, 599 (7th Cir. 2011) (finding a "miniscule" presence in Illinois not enough to support personal jurisdiction). The Fighters' motion to dismiss pursuant to Rule 12(b)(2) is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's second amended complaint is dismissed for lack of personal jurisdiction as to Defendants Thompson, the Firm, and the four Fighters. The court does not reach the Rule 12(b)(6) issue raised by Thompson and the Firm. The court notes that the remaining UWC participant Defendants, Kaitlin Young, Michele Ould, and Patricia Vidonic, have not joined these motions, and thus the lawsuit is not terminated.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 12/28/11